**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ALISON GIBBS,

    Plaintiff,

v.

DATAVAIL CORP.

    Defendant.

## COMPLAINT

Through her attorney Paul Maxon, Plaintiff Alison Gibbs brings this lawsuit for race discrimination, sex discrimination, and retaliation. Her allegations are as follows:

### JURISDICTION AND VENUE

1. Plaintiff Alison Gibbs is a former resident of Broomfield Colorado, and at all relevant times, she was a resident of this state. All actions complained of occurred within Colorado.

2. Defendant is a Delaware corporation that regularly conducts business within the State of Colorado.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343, and this action is authorized and instituted pursuant to 29 U.S.C. § 626(c).

4. Venue is proper in this Court as the unlawful employment practices alleged were committed within the jurisdiction of the United States District Court for the District of Colorado.

## FACTUAL ALLEGATIONS

5. In April 2018, Plaintiff Alison Gibbs, a Black woman, moved from Texas to Broomfield, Colorado to take a job as a Database Administrator with Defendant. As a condition of her employment, Defendant required her to sign a non-compete agreement. After hiring her, Defendant placed her under the supervision of manager Mike Krause, a white male.

6. In May of 2018, Defendant laid off a large number of employees. From his team, Krause selected for layoff only Black employees, and falsely represented to them that the layoffs were due to performance. When Defendant's former human resources manager Launie Lewandowski learned of this, she suspected that his decisions were racially motivated, but Defendant conducted no formal investigation at that time.

7. Nevertheless, Krause initially evaluated Ms. Gibbs performance favorably. On July 31, 2018, he wrote in her second quarter performance review that Defendant was "lucky to have her," and gave her an overall rating of 2.875.

8. On October 12, 2018 Krause wrote in Ms. Gibbs third quarter performance review that she was "fitting in nicely on her team." He gave her "exceeds expectations" ratings (the highest possible) for "client communications and relationship management," "internal communication/responsiveness" and "technical growth." He concluded that he was "confident she will [be successful] throughout her career," and gave her an overall rating of 3.5.

9. At approximately 5:30 a.m. on November 20, 2018, Ms. Gibbs phone failed, and she missed a call from work. In response, Krause formally wrote her up, and

threatened her with termination if it happened again. Similarly situated white male employees George Criaris and Tyler Linden, who also worked under Krause, regularly missed calls, but were not subjected to formal discipline or threatened with termination.

10. In the fall of 2018, Ms. Gibbs learned that she was pregnant. Her first pregnancy, it was a difficult one, as she suffered preeclampsia and was at high risk for complications and miscarriage. On or about November 21, 2018, Ms. Gibbs informed Krause of her pregnancy. Afterwards, she noticed him treating her differently. Specifically, Krause began to complain about her job performance, assigned her work to less senior team members, and curtailed his communications with her.

11. On or about December 18, 2018, while at work, Ms. Gibbs experienced cramping and bleeding related to her pregnancy. Because her pregnancy was high risk, she was worried that she might suffer a miscarriage. Due to the urgent nature of the situation, she required extra time in the restroom, and missed a call with a client.

12. On or about December 20, 2018, Ms. Gibbs was reprimanded by Krause for using the bathroom two days prior. During that meeting, Krause also informed her that her billable hours were being reduced, and that she was being assigned to a mentor.  Later that day, Ms. Gibbs spoke to Ms. Lewandowski to initiate a formal discrimination and harassment complaint.

13. In late December 2019, Ms. Lewandowski began an investigation of Krause. During her inquiries, Lewandowski learned that several other women, including: Brittney Barnard, Sharon Parks, Michelle Harris, Melissa Shunk, Bukola Daniels

and Amy Maleka had also complained about Kraus's treatment of them. When Lewandowski questioned Krause about Ms. Gibbs, he admitted that when he reprimanded Ms. Gibbs for using the restroom, he had known that she had done so because of her pregnancy.

14. On January 14, Defendant informed Ms. Gibbs that she would be receiving a small bonus.

15. On January 15, 2019, Krause approached Ms. Gibbs and requested a private meeting. In reference to her complaint, he told her that "harassment is a strong word," to which she responded that she believed her allegations were justified. The two then discussed Ms. Gibbs making a complaint to human resources.

16. The next day, January 16, 2019, Krause wrote his fourth quarter review of Ms. Gibbs' work. In it, he gave her a "below expectations" rating for "client communications and relationship management," and "needs improvement" (the lowest possible) for "internal communication/responsiveness" and "technical growth." Each of the three were categories in which he had given her the highest possible rating only three months prior. In the fourth quarter review, Krause also placed Gibbs on what was essentially a performance improvement plan, which Lewandowski later explained to Gibbs was an effort by Krause to "build a case" to terminate her in retaliation for her discrimination and harassment complaint.

17. Contemporaneously, and based on her investigation, Lewandowski came to the conclusion that Krause discriminated against women and minorities, and should be terminated. On approximately February 4, 2019, Lewandowski communicated her

findings and recommendation to Alina McCarthy, Defendant's Vice President of Human Resources. Two days later, Defendant terminated Lewandowski.

18. On March 8, 2019, Ms. McCarthy arranged for a meeting with Ms. Gibbs and Gwyneth Whalen, who Defendant had hired to investigate Ms. Gibbs' claims. During the meeting, Whalen informed Ms. Gibbs that she had found her claims against Krause to be unsubstantiated.

19. On March 20, 2019, Defendant assigned Ms. Gibbs a new manager, Chuck Farman. The next day, Ms. Gibbs forwarded McCarthy a doctor's note requesting that she be allowed bathroom breaks as an accommodation for her pregnancy.

20. On May 13, 2019, Ms. Gibbs filed a charge of discrimination against Defendant with the Colorado Civil Rights Division ("CCRD").

21. On May 22, 2019, nine days after she filed her charge, Farman directed Ms. Gibbs to sign Krause's unfavorable fourth quarter review from five months prior. Due to the stress of Krause's false and retaliatory statements contained in the review, her blood pressure increased dramatically, and she was placed by her doctor on immediate bed rest due to extreme risk of miscarriage.

22. On May 23, 2019, Ms. Gibbs began FMLA leave.

23. On May 29, 2019, Ms. Gibbs' daughter was born. Due in part to complications exacerbated by the stress of Defendant's discriminatory and retaliatory actions against her, her child had to be delivered by cesarean section. That same day, McCarthy emailed Ms. Gibbs and informed her that the Defendant was cutting off her access to the company's network, allegedly for "security" reasons. In her email, McCarthy claimed that she had seen Ms. Gibbs online earlier that day—which was

5

highly unlikely given that Ms. Gibbs had been delivering her child. Regardless, other employees, including Amy Maleka, who had taken leave had not had their access revoked.

24. On June 21, while she was still on medical leave, Defendant submitted its position statement to the CCRD in which it claimed that its actions towards Ms. Gibbs were justified.

25. On July 26, 2019, Ms. Gibbs was constructively discharged from Defendant.

## FIRST CAUSE OF ACTION:
## RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF
## 42 U.S.C. § 1981

26. As a Black person, Plaintiff is a member of a protected class.

27. Plaintiff engaged in protected activity by complaining about and opposing race discrimination.

28. As described above, Defendant took adverse actions against Plaintiff, including subjecting her to a hostile work environment.

29. Defendant's adverse actions against Plaintiff were because her membership in a protected class and participation in protected activities.

30. Defendant had no legitimate, non-discriminatory reasons for the adverse actions it took against Plaintiff.

31. Plaintiff was harmed by Defendant's actions.

## SECOND CAUSE OF ACTION:
## RACE AND SEX DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT
## 42 U.S.C. §§ 2000e *et seq.*

32. As a pregnant Black woman, Plaintiff was and is a member of several protected classes.

33. Plaintiff engaged in protected activity by complaining about and opposing discrimination.

34. As described above, Defendant took adverse actions against Plaintiff, including subjecting her to a hostile work environment.

35. Defendant's adverse actions against Plaintiff were because her membership in protected classes and participation in protected activities.

36. Defendant had no legitimate, non-discriminatory reasons for the adverse actions it took against Plaintiff.

37. Plaintiff was harmed by Defendant's actions.

## THIRD CAUSE OF ACTION:
## RACE AND SEX DISCRIMINATION AND RETALIATION IN VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT
## C.R.S. 24-34-301, *et seq.*

38. As a pregnant Black woman, Plaintiff was and is a member of several protected classes.

39. Plaintiff engaged in protected activity by complaining about and opposing discrimination.

40. As described above, Defendant took adverse actions against Plaintiff, including subjecting her to a hostile work environment.

41. Defendant's adverse actions against Plaintiff were because her membership in protected classes and participation in protected activities.

42. Defendant had no legitimate, non-discriminatory reasons for the adverse actions it took against Plaintiff.

43. Plaintiff was harmed by Defendant's actions.

### FOURTH CAUSE OF ACTION: FAMILY AND MEDICAL LEAVE THE FAMILY AND MEDICAL LEAVE ACT 29 U.S.C. §§ 2601-2654; 29 U.S.C. § 2612(a)(1)

44. As a pregnant woman with a high risk pregnancy, Plaintiff had a serious health condition, and was a qualified employee under the Family and Medical Leave Act.

45. Plaintiff availed herself of a right protected under the FMLA by requesting and taking medical leave.

46. In retaliation for her request for medical leave, Defendant subjected Plaintiff to adverse employment actions.

47. Defendant interfered with her medical leave.

48. Defendant discriminated against Plaintiff for taking medical leave.

49. There was a causal connection between Plaintiff's exercise of her rights under the FMLA and Defendant's adverse actions.

50. Plaintiff has been injured as a result of Defendant's actions or lack thereof.

### FIFTH CAUSE OF ACTION: DECLARATORY RELIEF C.R.S. §§ 8-2-113(2) AND (3)

51. As a Colorado worker, Plaintiff was protected from restrictions on her right to contract for employment as codified in C.R.S. §§ 8-2-113(2) and (3).

52. Notwithstanding the provisions of Colorado law, Defendant required Plaintiff to sign a non-competition agreement, limiting her right to work for competitors after the end of her employment with Defendant.
53. None of the statutory exceptions permitting non-competition agreements under Colorado law was applicable to Plaintiff's employment.
54. Plaintiff seeks declaratory relief stating that she is not bound by the terms of Defendant's non-compete agreement.

## **DEMAND FOR JUDGMENT**

Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award her all relief as allowed by law, including, but not limited to, the following:

   a. Actual economic damages as established at trial;
   b. Compensatory damages including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;
   c. Punitive damages;
   d. Pre-judgment and post-judgment interest at the statutory rate;
   e. Attorneys' fees, costs and expenses;
   f. Declaratory relief; and
   g. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 23rd day of December, 2020.

                                        s/ Paul Maxon
                                        Paul Maxon (Atty. Reg. # 37251)
                                        The Law Office of Paul Maxon, P.C.
                                        4450 Arapahoe Avenue
                                        Boulder, CO 80303
                                        Telephone: (303) 473-9999
                                        Fax: (303) 415-2500
                                        E-mail: paulmaxon@maxonlaw.com
                                        Attorney for Plaintiff Eluid Villarreal